IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL ACTION FILE |
| v. | NO. 4:17-CR-006-HLM-WEJ-4 |
| ANTHONY JOSEPH LAWHON, | |
| Defendant. | |

## NON-FINAL REPORT AND RECOMMENDATION

This matter is before the Court on defendant Anthony Joseph Lawhon's Motion to Suppress/Motion in Limine to Exclude Statements and the Fruits Thereof [213]. The parties have briefed the issues raised and the Court concludes that a hearing is not necessary because there is no dispute that the encounter resulting in the statements at issue was audio recorded accurately in its entirety. (See Def.'s Mot.; Gov't Resp. [219].) For the reasons explained below, the undersigned **RECOMMENDS** that the Motion be **DENIED**.

## I.     THE INDICTMENT

On December 5, 2017, a grand jury in the Northern District of Georgia returned a fifteen-count Superseding Indictment [102] against Brian Hernandez Acosta, Nilageo Alvarez Acosta, Anthony Joseph Lawhon, and Brandi Rice Stumpe, charging various offenses, including conspiracy to commit sex trafficking

of a minor in violation of 18 U.S.C. § 1594(c).  The Superseding Indictment charges Mr. Lawhon ("defendant") in seven counts, including conspiracy to sex traffic minors, sex trafficking of minors, providing cocaine to a person under twenty-one years old, false statements to a federal agency, and production of child pornography.

## II.   **STATEMENT OF FACTS**

On February 2, 2017, at 11:30 a.m., Federal Bureau of Investigation Special Agent Susan Scott, and Task Force Officers Alex Rivera, Aaron Simpson, and Christopher Tucker met defendant at his home and interviewed him.  (Gov't Attach. A [220] (hereinafter "Audio Rec.").)  Defendant was not Mirandized before or during the interview, and the Court accepts the recording submitted by the Government as a true record of the encounter on that day for the purposes of ruling on the instant Motion.

### III.   **DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

Defendant challenges his statements as obtained incident to an unlawful arrest, made without a Miranda warning or the presence of counsel, and coerced by misrepresentations of a benefit in exchange for agreeing to talk with agents.  (Def.'s Mot. 1-2.)[1]

### A.   **Defendant was not in Custody**

Defendant argues that he believed he was in custody when making the statements at issue on February 2, 2017, and thus was entitled to be Mirandized.  (Def.'s Mot. 2, 11.)  Mr. Lawhon also asserts that he invoked his Fifth Amendment

———————————

[1] Although Mr. Lawhon only discusses his right against compelled self-incrimination under the Fifth Amendment, he references other state and federal laws, including the Sixth Amendment, in an introductory paragraph to his Motion. (Compare Def.'s Mot. 3-4, with id. at 4-13.)  A laundry list of statutes and case law without developed legal argument is insufficient to establish violations thereunder. Defendant's citation to the Sixth Amendment is likely based on the Supreme Court's Fifth Amendment jurisprudence, which guarantees the right to counsel during custodial interrogation.  See, e.g., Miranda v. Arizona, 384 U.S. 436 (1966); see also Edwards v. Arizona, 451 U.S. 477, 484-85 (1981) (once a suspect in custodial interrogation asserts his right to counsel, not only must the interrogation cease, but he may not be approached for further interrogation until counsel has been made available).  However, the Sixth Amendment right to counsel does not attach until prosecution is commenced.  See McNeil v. Wisconsin, 501 U.S. 171, 175 (1991); see also United States v. Langley, 848 F.2d 152, 153 (11th Cir. 1988).  For the reasons set forth infra Part III.A, there was no custodial interrogation; thus, the prophylactic rights imposed by Miranda never attached.

3

right to counsel and to remain silent during the interview, but that request was ignored.  (Id. at 3-4.)

With regard to defendant's arguments under Miranda, the right to warnings based on that decision "attaches when custodial interrogation begins."  United States v. Acosta, 363 F.3d 1141, 1148 (11th Cir. 2004).  Courts typically apply a two-part test to determine whether a suspect is in custody for Miranda purposes: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave."  Thompson v. Keohane, 516 U.S. 99, 112 (1995).  Only "suspects 'subjected to restraints comparable to those associated with a formal arrest,' must be advised of their Miranda rights."  Acosta, 363 F.3d at 1149 (quoting Berkemer v. McCarthy, 468 U.S. 420, 441 (1984)).

In assessing whether a reasonable person in defendant's position was subjected to restraints comparable to those associated with a formal arrest, the Eleventh Circuit directs this Court to consider the totality of the circumstances, including whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated compliance with the agents could be compelled, as well as the location and length of the detention.  United States v. Luna-Encinas, 603 F.3d 876, 881 (11th Cir. 2010).  Additionally, "[t]he test is objective: the actual,

4

subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant." United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996).

Under the totality of the circumstances, defendant has not established that the agents restricted his movements in a manner akin to a formal arrest or in any way that a reasonable person would conclude that he was in custody for the purposes of Miranda. Mr. Lawhon voluntarily returned to his home to speak with the agents, invited them inside, was not restrained, and was never told he could not leave or could not ask the agents to leave.    (Audio Rec. 0:00-3:43.)  Rather, defendant directed the agents to sit down and almost immediately began discussing his relationship with Hernandez Acosta and continued speaking for fourteen minutes before inquiring whether he himself might be implicated. (Id. at 0:00-14:00.) The discussion remained conversational and polite throughout. The agents neither insisted that Mr. Lawhon speak with them nor threatened him if he did not. Rather, the agents repeatedly told defendant that it was his decision whether to speak to them or whether to contact an attorney, and that he could tell the agents at any point if he did not want to continue talking. (Id. at 17:26-17:37, 44:42-45:07, 46:25-46:32.)

5

Here, the circumstances weigh in favor of finding the encounter to be a non-custodial interrogation.   Mr. Lawhon remained in his home throughout the encounter (a familiar and presumably comfortable environment), he was not physically restrained, and the agents made no threats, engaged in no displays of force, and used no harsh language.  See United States v. Stinson, 659 F. App'x 534, 537 (11th Cir. 2016) (per curiam) (holding that an interview with law enforcement conducted at defendant's home, and not in "an unfamiliar environment, such as a police station" weighed in favor of finding a non-custodial interrogation); United States v. Brown, 441 F.3d 1330, 1348 (11th Cir. 2006) ("Although the location of the interview is surely not dispositive in determining whether the interviewee was in custody, "'[c]ourts are much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings,' such as the suspect's home.") (internal citation omitted).  Mr. Lawhon claims that his freedom of movement was restrained in the home because he believed it was necessary to ask the agents for permission to get a glass of water and because they followed him into the kitchen while he did so.   However, defendant's subjective belief is irrelevant and that argument is not persuasive.  On the Audio Recording, Mr. Lawhon asks the agents if he could get a glass of water; the group is then heard moving to the kitchen while making small talk about defendant's décor.  (Audio

6

Rec. 19:09-20:42.)  Notably, the Eleventh Circuit has found no custodial detention under much more restrictive circumstances.  See United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989) (although officers detained suspect by display of firearms and handcuffing, the court declined to find that it constituted an arrest).

Likewise, the mere presence of multiple agents did not transform the encounter into custody and the agents' intentions in speaking with Mr. Lawhon are irrelevant.  The officers repeatedly reminded defendant that it was his choice whether to speak with them and that they were there to gather information.  That defendant weighed whether to consult an attorney shows he was aware of his right to counsel, which he consciously decided to forego each time he continued the conversation.   Indeed, at the conclusion of the approximately hour-long conversation, defendant volunteered to contact the agents if he remembered any additional information.  (Audio Rec. 1:04-1:05.)  Thus, for the reasons set forth above, the undersigned **REPORTS** that Mr. Lawhon has not established that his freedom was curtailed to a degree associated with formal arrest or that he invoked his right to counsel.  Thus, the agents were not required to Mirandize defendant or stop speaking with him at any time during the February 2, 2017 encounter.

7

### B.   Statements were Voluntary and not Induced by False Promises

Mr. Lawhon argues that the agents promised him that his honesty and willingness to talk would only help, thereby creating a hope of benefit in exchange for his cooperation.  (Def.'s Mot. 3, 7-8.)  Likewise, defendant contends the agents promised him that they did not intend to bring a drug case, thereby encouraging him to talk about the use of illegally obtained controlled substances during the alleged sex offenses.  (Id. at 7.)  Defendant argues that the agents' intent was to obtain as much information as possible about his involvement in the alleged crimes. (Id. at 8.)

An inquiry into voluntariness of a confession focuses on whether the defendant's free will was overborne by any improper influence of law enforcement. Colorado v. Connelly, 479 U.S. 157, 170 (1986).  The Court again must consider the totality of the circumstances surrounding the statement, including such factors as the defendant's intelligence, the length of detention, the nature of the interrogation, and any use of force or deprivation.  United States v. Bernal-Benitez, 594 F.3d 1303, 1319 (11th Cir. 2010); Miller v. Dugger, 838 F.2d 1530, 1536 (11th Cir. 1988) (district court must consider totality of the circumstances in assessing whether police conduct was causally related to a confession).

8

"[A] confession induced by threats or promises is not voluntary." <u>United States. v. Vera</u>, 701 F.2d 1349, 1364 (11th Cir. 1983) (citing <u>Bram v. United States</u>, 168 U.S. 532, 542 (1897)).  However, a mere admonition to the accused to tell the truth does not render a confession involuntary.  <u>Id.</u> at 1364; <u>United States v. Hipp</u>, 644 F. App'x 943, 947 (11th Cir. 2016) (per curiam).  Likewise, an agent's statement that any cooperation would be reported to the appropriate authority but that no promise of leniency could be made has been held to be insufficient by itself to invalidate an otherwise legal confession.  <u>United States v. Nash</u>, 910 F.2d 749, 753 (11th Cir. 1990) (statement that cooperating defendants generally "fared better time-wise" did not amount to illegal inducement); <u>United States v. Ballard</u>, 586 F.2d 1060, 1063 (5th Cir. 1978) ("[T]elling the [defendant] in a noncoercive manner of the realistically expected penalties and encouraging [him] to tell the truth is no more than affording [him] the chance to make an informed decision with respect to [his] cooperation with the government.").[2]  "[T]he kinds of deception that are generally deemed to trigger suppression are lies about a defendant's legal rights (*i.e.,* 'you must answer our questions'), false promises (*i.e.,* 'whatever you

---

[2] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions handed down before the close of business on September 30, 1981. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206 (11th Cir. 1981) (en banc).

9

say will be just between us'), or threats (*i.e.,* 'if you don't talk, you won't see your family for a very long time')." United States v. Graham, No. 3:13-cr-11-TCB, 2014 WL 2922388, at *9 (N.D. Ga. June 27, 2014) (internal quotation marks and citation omitted).

Here, there is no evidence that the agents coerced Mr. Lawhon's February 2, 2017 statements.  As discussed supra Part III.A, the agents met with Mr. Lawhon in his home, spoke with him in calm, conversational tones, made no threats or displays of force, and never demanded that he continue speaking with them.  Rather, the agents repeatedly reminded defendant that the decision to do so was his.  Mr. Lawhon did not seem impaired and intelligently explained to the agents that he was a commercial contractor.  The agents did not prevent Mr. Lawhon from getting a drink when he was thirsty and the conversation was not unduly prolonged, but concluded amicably after about an hour.

The agents' assertions that the truth always helps and that they would tell their supervisor defendant was cooperative do not constitute a promise of reward or leniency sufficient to make Mr. Lawhon's statements involuntary.  Rather, the agents clearly explained that any charging decisions were made by the prosecutor and that they were just fact finders.  (See Audio Rec. 18:04-19:04, 45:45-46:13, 1:03:37-1:04:18.)  Likewise, the agents' assertions that their questions about illegal

10

drugs were not an attempt to make a six-month-old drug case does not constitute illegal inducement under the circumstances or a promise of immunity.  The brief exchange regarding illegal drugs took place more than thirty-minutes into the conversation (id. 1:03-34:45), and is insufficient to render Mr. Lawhon's statements involuntary.  The agents gave defendant no assurances that his statements would not be used against him and there is no indication the agents knew that prosecutors would charge defendant with a drug offense in a superseding indictment eight months later.  See United States v. Farley, 607 F.3d 1294, 1329 (11th Cir. 2010) (holding confession voluntary where the defendant was told questioning concerned terrorism investigation, when the purpose concerned his attempted exploitation of a minor); see also Moran v. Burbine, 475 U.S. 412, 423 (1986) (considering it "irrelevant" to voluntariness analysis whether misleading statement by police was intentional or inadvertent).

Finally, that Mr. Lawhon considered aloud whether he should contact an attorney before continuing to speak with the agents does not make his statements involuntary.  See Frazier v. Cupp, 394 U.S. 731, 738 (1969) (confession voluntary when defendant continued to speak with law enforcement after stating:  "I think I had better get a lawyer before I talk any more.").  The agents were not required to provide defendant with information regarding their investigation or tell him if he

11

was the focus of their questions.  See United States v. Barner, 572 F.3d 1239, 1244 (11th Cir. 2009) ("[T]he Supreme Court has 'never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights.'") (citation omitted).  It is clear from his initial statements to the agents that Mr. Lawhon knew of Hernandez Acosta's arrest and alleged dealings with minors, and that Mr. Lawhon continued speaking with the agents in an effort to clear himself of any culpability.  Under the totality of the circumstances, there is no evidence that Mr. Lawhon's free will was overborne by the agents during the February 2, 2107 encounter.  Accordingly, the undersigned **REPORTS** that there is no basis to suppress defendant's statements and **RECOMMENDS** that the Motion be **DENIED**.

## IV.   CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress/Motion in Limine to Exclude Statements and the Fruits Thereof [213] be **DENIED**.

**SO RECOMMENDED**, this 5th day of July, 2018.

_Walter E. Johnson_
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

12